**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

SHANNON L. BOPPRE,
    Appellant,

   v.

DEPARTMENT OF THE INTERIOR,
    Agency.

DOCKET NUMBER
DE-0752-14-0386-I-1

DATE: October 11, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Shannon L. Boppre, Belcourt, North Dakota, pro se.

Teresa M. Garrity, Esquire, Bloomington, Minnesota, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1  The appellant has filed a petition for review of the initial decision, which affirmed her removal from Federal service. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2        The appellant was formerly a GS-5 Telecommunications Equipment Operator for the Turtle Mountain Agency in the agency's Bureau of Indian Affairs. Initial Appeal File (IAF), Tab 4 at 23. On April 8, 2014, the agency proposed to remove her based on four charges: (1) misuse of a Government charge card (2 specifications); (2) failure to follow instructions (1 specification); (3) delinquency on a Government charge card (1 specification); and (4) off-duty criminal misconduct (5 specifications). *Id.* at 39-46. After hearing the appellant's oral reply, *id.* at 35-37, the deciding official sustained all charges and imposed the penalty of removal, effective May 16, 2014, *id.* at 23, 25-33.

¶3        After holding the appellant's requested hearing, the chief administrative judge found that the agency proved its charges by preponderant evidence and that it acted well within the bounds of reasonable management discretion in imposing the penalty of removal. IAF, Tab 17, Initial Decision (ID) at 9-17. He also found that the appellant failed to prove her affirmative defense of harmful error. ID at 17-18. The appellant petitions for review of the initial decision. Petition for Review (PFR) File, Tab 1.

¶4        The facts of the case, as the chief administrative judge found them, are as follows. The agency scheduled the appellant to go on temporary duty (TDY) to Standing Rock Agency from December 27, 2013, to January 7, 2014. Between

December 21-24, 2013, the appellant made several cash withdrawals totaling $260 using her Government charge card, which she claimed were to buy things she needed for her trip, such as shampoo. Her withdrawals triggered an alert, and the agency's finance department suspended her card. When the appellant was unable to reserve a hotel room, her supervisor, Chief L.N., had her card reinstated. She instructed the appellant that she was to use the card only for her hotel room and food; she was not to make any further cash withdrawals. Instead, the appellant would have to obtain reimbursement for any allowable out-of-pocket expenses by submitting a travel voucher. The appellant made daily cash withdrawals from January 2-5, 2013, in the total amount of $760. The appellant's supervisor ended the appellant's TDY because the agency's finance department continued to report problems with the appellant's charge card, whereupon it was determined that the appellant had exceed her allowable per diem by approximately $600.

¶5 The appellant attempted to make a payment to the credit card company to cover the overage, but she did so with a bad check and her account went into delinquent status, which the agency discovered via a monthly report of agency employees with past due accounts. Then the agency discovered that, on August 26, 2013, the appellant pled guilty to 5 misdemeanor counts of passing bad checks.

¶6 The agency's first charge, misuse of a Government charge card, was for making $1,160 in cash withdrawals when the authorized meals and incidental expenses (M&IE) was only $46 per day, thereby exceeding her withdrawal limit by $631, and for using the card for $229.14 in purchases after she had withdrawn her maximum per diem. IAF, Tab 4 at 39-40, 49-113. The appellant admitted to making the cash withdrawals but claimed she did not exceed her per diem on purpose. The chief administrative judge correctly found that, because the charge did not require proof of intent, the appellant's admission that she made the Government card charges was sufficient to sustain the specification. *Baracker v.*

*Department of the Interior*, 70 M.S.P.R. 594, 602 (1996); ID at 10. He also found that the appellant understood the agency's policy against using the card for purchases once the per diem limit had been met. ID at 10-11.

¶7    The second charge, failure to follow instructions, concerned the four cash withdrawals the appellant made in January after Chief L.N. expressly instructed her not to make any further cash withdrawals. The appellant contended that her supervisor instructed her to stop making withdrawals for a few days but had given her permission to use her card again by the time she resumed making withdrawals. The chief administrative judge found that the appellant's explanation was not supported by the documentary evidence and otherwise unsubstantiated, although the appellant could have called her supervisor as a witness if the appellant believed she would corroborate the appellant's story. ID at 11-12.

¶8    The third charge, delinquency on a Government charge card, concerned the appellant's appearance on the March 2014 delinquency list with a balance of $521 more than 30 days past due. IAF, Tab 4 at 115-16. The appellant admitted that she was delinquent, and the chief administrative judge found that this was sufficient to sustain the charge. ID at 12.

¶9    The fourth charge, off-duty criminal misconduct, concerned the five misdemeanor convictions for passing bad checks. IAF, Tab 4 at 118-27. The appellant attempted to explain that the bad checks were the result of bank errors, not the result of her own criminal conduct, and were only misdemeanors and so not very serious. The chief administrative judge found that the agency only charged her with pleading guilty to misdemeanors and that her attempts to blame her bank were unsubstantiated. *Cf. Alberto v. Department of Veterans Affairs*, 98 M.S.P.R. 50, ¶ 10 (2004) (finding that the appellant's attempt to shift the blame for his misconduct to others reflected poor potential for rehabilitation); ID at 12-13.

¶10      On review, the appellant reiterates her argument below that, if the agency had issued her a travel authorization in a timely manner, she would have known what her allowed per diem was and would not have exceeded it. PFR File, Tab 1 at 1. It appears that the agency's electronic travel system was down and it was difficult to find anyone available to issue a manual travel authorization because of the end-of-year holiday season so the appellant did not receive her travel authorization before she left. The appellant suggests that the lack of a travel authorization meant she did not know the limit on her per diem. It is fairly easy to discover Federal per diem rates by making a telephone call or conducting a simple internet search. Instead, the appellant contacted the issuing bank, which could only tell the appellant the maximum amount that the bank would authorize, not the amount allowed by the agency. We agree with the chief administrative judge that the absence of a travel authorization does not excuse the appellant's behavior.

¶11      The appellant contends for the first time on review that the agency removed her in retaliation for stating that the agency violated travel policy by sending her TDY without a travel authorization. *Id*. The appellant began making improper cash withdrawals days before she would have received a travel order, so it makes little sense that the agency would retaliate against her for making disclosures that did not begin until she already had commenced her course of misconduct. In any event, the Board will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence. *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980). The appellant has made no such showing here.

¶12      The appellant claimed that the agency's failure to provide her with a travel authorization prior to her departure constituted harmful error warranting reversal of the removal. The chief administrative judge found, and we agree, that the late arrival of the appellant's travel authorization is not "harmful error in the

application of the agency's procedures in arriving at such decision" under 5 U.S.C. § 7701(c)(2)(A). *Boatman v. Department of Justice*, 66 M.S.P.R. 58, 63 (1994); ID at 17-18. Instead, it is an alleged error that concerns the circumstances under which the charged misconduct occurred and relates, if at all, to the merits or the penalty. *Boatman*, 66 M.S.P.R. at 63.

¶13    Turning to the penalty, when all of the agency's charges are sustained, the Board will review the agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within the tolerable limits of reasonableness. *Ellis v. Department of Defense*, 114 M.S.P.R. 407, ¶ 11 (2010). In making this determination, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that managerial judgment has been properly exercised. *Id.* The Board will modify or mitigate an agency-imposed penalty only when it finds the agency failed to weigh the relevant factors or the penalty clearly exceeds the bounds of reasonableness. *Id.*

¶14    The nature and seriousness of the appellant's offense is the most significant factor in a penalty determination. *Hamilton v. Department of Homeland Security*, 117 M.S.P.R. 384, ¶ 11 (2012). Here, as to the penalty determination, the deciding official prepared an extensive *Douglas*[2] analysis as part of the removal notice. IAF, Tab 4 at 28-32. He considered the appellant's misconduct to be very serious because it showed a blatant disregard for her supervisor's instructions and of the agency's charge policies despite specific notice of the rules. *Id.* at 29. The deciding official found that the delinquency on the appellant's charge card account and her misdemeanor convictions showed, "you did not merely fail to pay your debts, you attempted to pay them from non-existent accounts, which demonstrates financial irresponsibility and a lack of

---

[2] *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981).

integrity." *Id.* He considered that the appellant's position was with a law enforcement organization and required frequent travel and, necessarily, frequent use of the Government charge card and that her misconduct called her honesty and integrity into doubt. *Id.* at 30.

¶15 The appellant has a prior 14-day suspension in August 2012 for 9 specifications of misuse of a Government credit card (in which she made unauthorized cash withdrawals while not in a travel status), and 1 specification of failure to pay a Government credit card on time. *Id.* at 31, 129, 131-36. By that point in time, the appellant had clear notice of the policies and rules surrounding the use of Government charge cards. However, within less than 4 months from her return to duty following the suspension, the appellant again began to misuse her charge card. Even after her supervisor gave the appellant specific instructions to stop taking cash advances from the charge card, the appellant continued to do so. The deciding official found these circumstances to reflect poor potential for rehabilitation. *Id.* at 31. He remarked that the appellant claimed during her oral reply that she had learned her lesson after the suspension, but she clearly had not. *Id.* at 31, 36.

¶16 The deciding official also considered that removal was consistent with the agency's table of penalties and with the penalties imposed on others for similar offenses. *Id.* at 30. He considered the appellant's more than 13 years of service, her good performance record, and reputation for dependability. *Id.*

¶17 On review, the appellant asserts generally that the deciding official did not know her well enough to make judgments about her work ethic and character. PFR File, Tab 1 at 1. She also alleges that the misdemeanor convictions did not involve dishonesty because if she had wanted to be dishonest, she would not have reported them to her supervisor as soon as she had notice from the court. *Id.* In her oral reply, she said she informed her supervisor, not that she was facing charges for passing bad checks, but about problems with her bank. IAF, Tab 4 at 36-37. However, a coworker saw a newspaper article about the appellant's

convictions and showed it to the appellant's supervisor. *Id.* The notes of the oral reply state, "[The appellant] expressed disappointment that some co-workers felt compelled to be involved in other employees' personal affairs." *Id.* at 37. The appellant's statements in her oral reply are at odds with her claim on review that she informed her supervisor about her legal trouble.

¶18     The chief administrative judge found, and we agree, that the deciding official properly considered the aggravating and mitigating factors most relevant to the case. He further found, and we agree, that the penalty of removal is well within the bounds of reasonableness, and there is no basis here to interfere with the agency's legitimate exercise of management discretion.

¶19     Accordingly, we find that the chief administrative judge correctly affirmed the agency's removal action.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in

title 5 of the U.S Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD: _____
Jennifer Everling
Acting Clerk of the Board

Washington, D.C.